is defined to be, "when a trader or merchant whose business affairs are in such a condition as that he is unable to pay his debts as they become due in the ordinary course of his business, as men in trade usually do, he is insolvent." Toof v. Martin, 13 Wall. [80 U. S.] 40; Buchannan v. Smith, 16 Wall. [83 U. S.] 277; Wager v. Hall, Id. 584. It is very clear that such was the condition of Shoenberger not only on the 5th of April, but on the 29th day of March, 1876. He was not only therefore insolvent in fact, but was clearly within the legal definition of insolvency.

The next question to be determined is, had the bank reasonable cause to believe that Shoenberger was insolvent? The supreme court of the United States has also defined what shall constitute reasonable cause to believe a party is insolvent, and it is that when the condition of a debtor's affairs are known to be such that prudent business men would conclude that he could not meet his obligations as they matured in the ordinary course of his business there is reasonable cause to believe him insolvent. Merchants' Nat. Bank v. Cook, 95 U. S. 342.

The evidence in the case shows that on the day of the maturity of the note that one member of the bank called upon Shoenberger after banking hours, when the note had been dishonored, and requested of him security for its payment, he does not say he demanded payment of him, but it is very certain that on that day his affairs were not in such a condition as that he could meet the obligation, nor were they in such condition the next day, and that fact must have been known to the bank, else why was it not met, and why the demand and acceptance of security for its payment?

But it is said that in this case that Shoenberger was the indorser only of this note, that he was not the debtor in the sense in which that term is used by the supreme court, and that therefore the rule which we have stated cannot apply. I think this distinction cannot be maintained. Whilst it is true that he was the indorser, it is nevertheless true that he was the debtor of the bank, and under the laws of Ohio he could have been sued without joining the maker, and the entire debt could have in the first instance been collected from him; and indeed in this case it seems as if the bank did look to him alone for the payment thereof. They never called upon the maker for payment, but procured from the indorser a waiver of demand for payment. I think therefore that this case does not come within the rule laid down by the supreme court.

That Shoenberger was insolvent in fact and in law when this transfer was made and when the money was paid. That they were made by him when he could not secure or pay all his creditors, or could have reasonably hoped to have done so. That their effect was to give a preference to the bank, and

that under such circumstances the law presumes that such was his intent in making them. That the bank had reasonable cause to believe him insolvent in law, and that they must be charged in law with the knowledge that such transfer and payment was intended to be in fraud of the bankrupt laws. The bank will therefore be required to surrender the preference thus obtained by paying to the assignee the amount realized from the foreclosure of the mortgage, to transfer the policy of insurance to the assignee, and to pay him the sum of $450 with interest from the date of its receipt.

There is more difficulty in regard to the payment of the installments by the bank, upon the policy of insurance. It has been held that where a preference was taken in fraud of the bankrupt laws that the parties receiving it would not be allowed for the payments of liens or charges upon it, but there does not seem to have been in this case any actual intention of fraud upon the part of the bank, or upon the part of Shoenberger, and the rule would be a severe one. But the policy in this case was non-forfeitable, and the bank was under no obligations to pay these installments. It was not necessary to preserve its life. It must therefore be held to have made them at its own risk. But it should be entitled to have whatever interest accrued by reason of such payments. The bank having paid three installments, and Shoenberger four, the bank will be entitled to three-sevenths of the value of the policy, and the assignee to four-sevenths of such value.

---

## Case No. 12,803.

### SHOMERS' CASE.

[See Case No. 12,808.]

---

SHONNIGER MELODEON CO. (HITCHCOCK v.). See Case No. 6,537.

SHOOK (CARILLO v.). See Case No. 2,407.

---

## Case No. 12,804.

### SHOOK et al. v. RANKIN et al.

[6 Biss. 477; 2 Law & Eq. Rep. 236; 8 Chi. Leg. News. 345; 3 Cent. Law J. 569; 22 Int. Rev. Rec. 239.] 1

Circuit Court, N. D. Illinois. Oct., 1875.

COPYRIGHT—TRANSLATIONS OF PLAYS—INJUNCTION—PRACTICE.

1. Where the translator of a play, by consent of the author, has obtained a copyright upon it, the owner of such copyright can maintain a bill enjoining any other person from using or representing such translation, or any part of it.

2. Affidavits, evidently intended to be used in a case, but not entitled in it, will be allowed to be read on motion for injunction.

[Cited in Tompkins v. Halleck, 133 Mass. 34.]

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 3 Cent. Law J. 569, contains only a partial report.]